UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| S. R. MITCHELL,<br><br>    Plaintiff,<br><br>    v.<br><br>BERWYN PARTNERS, INC., d/b/a Hennessy Automotive Companies, d/b/a Hennessy Ford Lincoln Atlanta, and DOES 1-100,<br><br>    Defendants. | Case No. 18-cv-01991-JSW<br><br>**ORDER GRANTING, IN PART, AND DENYING, IN PART, MOTION TO DISMISS**<br><br>Re: Dkt. No. 28 |

Now before the Court for consideration is the motion to dismiss filed by Berwyn Partners, Inc. d/b/a Hennessy Ford Lincoln Atlanta ("Berwyn Partners").[1] The Court has considered the parties' papers, relevant legal authority, and the record in this case, and it has found the motion suitable for disposition without oral argument. *See* N.D. Civ. L.R. 7-1(b). The Court HEREBY GRANTS, IN PART, AND DENIES, IN PART, Berwyn Partner's motion to dismiss.

**BACKGROUND**

This dispute arises out of Plaintiff S.R. Mitchell's ("Mitchell") purchase of a 2017 Ford Fusion (the "Fusion") from Berwyn Partners, which she saw advertised for sale on www.TrueCars.com. (First Amended Complaint ("FAC") ¶¶ 1-3, 5; Declaration of S.R. Mitchell ("Mitchell Decl."), ¶ 2.) Hennessy Ford is located in Atlanta, Georgia, and it is owned and operated by Berwyn Partners. (FAC ¶ 4; Declaration of Peter Hennessy ("P. Hennessy Decl."), ¶ 3.) Berwyn Partners does not have employees, offices, or a registered agent in California. (*Id.*, ¶

---

[1] The Court shall use the name of the legal entity rather than its "d/b/a" in this Order.

11.)² According to Mitchell, Berwyn Partners advertised the Fusion for $28,380.00 (the "advertised price"), which she alleges represented a discount from the manufacturer suggested retail price ("MSRP") of $36,690.00 and which included a rebate of $4,000 that would be applicable to Georgia residents, whereas California residents would be entitled to a rebate of $5,500.00. Mitchell alleges that Bill Platcher, one of Berwyn Partner's sale representatives, told her the rebates were the same for California and for Georgia. (FAC ¶¶ 5-6, 19 & Ex. A.)³ The transaction was documented in a Bill of Sale. (FAC ¶ 11 & Ex. D; Declaration of Rick Thomas ("Thomas Decl. I"), ¶ 5, Ex. A.)⁴

Mitchell alleges that, based on the advertised price, she "did not seek any dealer-assisted financing and came prepared for a cash purchase and or execution of a pre-approved financing offer by Capital One Automotive Financing." (FAC ¶ 6; *see also* Mitchell Decl., ¶ 2.) Mitchell also attests that the financing offer required her to register the car in her "domicile state," California. (Mitchell Decl., ¶¶ 2, 4.) Mitchell alleges she advised the sale representatives that she was a California resident and that the Fusion would need to be registered and titled in California. (FAC ¶ 7.)

According to Mitchell, Platcher also told her that Berwyn Partners "was qualified and able to complete the registration and all requirements in California." (*Id.* ¶ 8.) Mitchell also alleges that only Berwyn Partners knew of the Fusion's smog inspection history and knew, but did not disclose, that "it had not smogged the car in California" when it sold the Fusion to her. (*Id.* ¶¶ 9-10.)⁵ Mitchell contends Berwyn Partners violated California Vehicle Code section 114000, which

---

² Berwyn Partners incorporated by reference declarations from Peter Hennessy and Mr. Thomas, which it filed in connection with its first motion to dismiss. Mitchell objects to statements in Mr. Hennessy's declaration and statements made by Rick Thomas, Berwyn Partner's Chief Financial Officer and Secretary, that Berwyn Partners does not "conduct business" in California, on the basis that those are legal conclusions. The Court SUSTAINS those objections.

³ Exhibit A is a document that shows the MSRP. It is not an advertisement for the Fusion.

⁴ Mitchell only attaches the first page of the Bill of Sale. Mr. Thomas attaches a full copy of the Bill of Sale to his declaration.

⁵ Mitchell attaches an email from Mr. Platcher that includes a breakdown of California tax, tag, and title fees. That breakdown states that "California requires all vehicles purchased out-of-state to complete a SMOG Inspection *in* California prior to title and registration." (FAC, Ex. C at

requires an individual or entity to have a license to act "as a registration service, engage in the business of soliciting or receiving any application for the registration, renewal of registration, or transfer of registration or ownership of any vehicle of a type subject to registration under this code … if any compensation is received or solicited for the service." (*See, e.g., id.* ¶¶ 12, 33-35.) Mitchell also alleges that instead of providing her with a temporary California registration and a permanent metal license plate, as she requested, Berwyn Partners only provided a temporary registration for the Fusion in Georgia. (*Id.* ¶ 13, Ex. E.)

According to Mr. Thomas, Berwyn Partners sent a letter to the California Department of Motor Vehicles ("DMV") "in order to assist [Mitchell] with registration of the [Fusion] in California" and enclosed the title document and a check for $3,588.45 "to pay state sales taxes and registration fees on the" Fusion. (Thomas Decl. I, ¶ 6, Ex. B.) That letter states "[p]lease contact Ms. Mitchell ... and she will come to your office to complete the registration." (*Id.*, Ex. B.) Mitchell alleges that this was not what the parties agreed would occur. (FAC ¶ 10.)

Notwithstanding that letter, Mitchell alleges that Berwyn Partners "has failed and refused to produce any form of documentation or support that it actually transferred said money" to the DMV or to the correct taxing authorities and alleges it has not returned this money to her. (FAC ¶¶ 16-17.) Mitchell also alleges that Berwyn Partners misappropriated $1,500 of the $5,500 California rebate and maintains possession of the Fusion. (*Id.* ¶¶ 18-19.)

Based on these and other allegations that the Court shall address as necessary, Plaintiff brings claims for: (1) conversion and theft; (2) negligence and negligence per se; (3) fraud, deception, and concealment; (4) violations of Georgia's Fair Business Practices Act; and (5) violations of California's Unfair Competition Law.

**ANALYSIS**

Berwyn Partners moves to dismiss for lack of subject matter jurisdiction, lack of personal jurisdiction, improper venue, and for failure to state a claim. It also moves, in the alternative, for a transfer of venue under 28 U.S.C. section 1404 to the United States District Court for the Northern

---

3 (emphasis added).)

3

1 District of Georgia.

### A. The Court Concludes It Has Subject Matter Jurisdiction.

Mitchell alleges the Court has diversity jurisdiction. *See* 28 U.S.C. § 1332(a). Berwyn Partners argued in its opening brief that the Court lacked subject matter jurisdiction because the parties were not diverse. Berwyn Partners appeared to abandon that argument by failing to address Mitchell's arguments and evidence in opposition in its reply brief. However, in its joint case management conference statement, it states that it "denies that subject matter jurisdiction exists." (Dkt. No. 40, Joint Case Management Conference Statement at 1:27-2:1.) Accordingly, the Court shall not treat the argument as abandoned.

A motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction may be "facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Where a defendant makes a facial attack on jurisdiction, factual allegations of the complaint are taken as true. *Federation of African Am. Contractors v. City of Oakland*, 96 F.3d 1204, 1207 (9th Cir. 1996); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) ("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion dismiss, [courts] presume that general allegations embrace those specific facts that are necessary to support the claim.") (internal citation and quotations omitted). The plaintiff is then entitled to have those facts construed in the light most favorable to him or her. *Federation of African Am. Contractors*, 96 F.3d at 1207.

In contrast, a factual attack on subject matter jurisdiction occurs when a defendant challenges the actual lack of jurisdiction with affidavits or other evidence. *See Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). "When the defendant raises a factual attack, the plaintiff must support … jurisdictional allegations with 'competent proof,' under the same evidentiary standard that governs in the summary judgment context." *Leite*, 749 F.3d at 1121 (quoting *Hertz Corp. v. Friend*, 559 U.S. 77, 96-97 (2010)). The district court may resolve those factual disputes itself, unless "the existence of jurisdiction turns on disputed factual issues[.]" *Id.* at 1121-22 (citations omitted).

Mitchell is deemed to be a citizen of the state in which she is domiciled. *See Kanter v.*

*Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). Mitchell's domicile is her "permanent home, where she resides with the intention to remain or to which she intends to return." *Id.* The intent to remain is the critical inquiry; a person "residing in a given state is not necessarily domiciled there, and thus is not necessarily a citizen of that state." *Id.* Accordingly, the Ninth Circuit has held that an averment of a person's residence does not constitute an averment of that person's citizenship. *See id.* at 857-58.

Berwyn Partners argued that notwithstanding the allegation she is a California resident, Mitchell was domiciled in Georgia when she filed the complaint. In support, Berwyn Partners submitted records from the California State Bar, which showed a Georgia address. Berwyn Partners also submits evidence that Mitchell is listed as the Chief Executive Officer for two Georgia corporations headquartered in Atlanta, Georgia. (Request for Judicial Notice, Exs. A & B.)[6]

Mitchell, in turn, attests that she is "domiciled in Alameda County" and intends to "remain in Alameda Count[y] or California in general if I elect to move communities." (Mitchell Decl., ¶ 3.) Mitchell also attests that: all of her personal property is located in California; she is registered to vote in Alameda County; she voted in California's most recent election; she has a California driver's license; and she pays California's homeowner's insurance, property insurance, and automobile insurance. (*Id.* ¶¶ 4, 7.) As noted, Berwyn Partners did nothing on reply to contradict this evidence, and it has not asked for jurisdictional discovery to challenge the statements made in Mitchell's declaration. The Court concludes that Mitchell has put forth sufficient evidence to show she is domiciled in California and, therefore, diversity exists. Berwyn Partners has not raised any challenges to the amount in controversy, which Mitchell alleges is "more than $375,000." (FAC ¶ 1.)

The Court concludes it has subject matter jurisdiction and DENIES, IN PART, Berwyn Partner's motion to dismiss on this basis.

---

[6] The Court takes judicial notice of the records, and notes that Mitchell objects to the "truth" of the facts contained therein. The Court treats those facts as disputed.

5

**B.     Mitchell Fails To Show the Court Has Personal Jurisdiction Over Berwyn Partners.**

Berwyn Partners also moves to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). Mitchell bears the burden to establish that personal jurisdiction over Berwyn Partners is proper. *Menken v. Emm*, 503 F.3d 1050, 1056 (9th Cir. 2007). When "a district court acts on a defendant's motion to dismiss without holding an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss. … That is, the plaintiff need only demonstrate facts that if true would support jurisdiction over the defendant." *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995) (citations omitted); *see also AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996). Where the facts are not directly controverted, plaintiff's version of the facts is taken as true. *See AT&T*, 94 F.3d at 588. Likewise, conflicts between the facts contained in the parties' affidavits must be resolved in a plaintiff's favor for purposes of deciding whether a prima facie case for personal jurisdiction exists. *Schwarzenegger v. Fred Martin Co.*, 374 F.3d 797, 800 (9th Cir. 2004).

"The general rule is that personal jurisdiction over a defendant is proper if it is permitted by a long-arm statute and if the exercise of that jurisdiction does not violate federal due process." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). California's long-arm statute permits a court to exercise personal jurisdiction over a defendant whenever the exercise of such jurisdiction would be consistent with due process. *See id.*; *see also* Cal. Code of Civ. Pro §410.10. The exercise of personal jurisdiction over a defendant comports with the Due Process Clause where the defendant has sufficient "minimum contacts" with the forum state such that the assertion of jurisdiction "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 315 (1945). The "strength of contacts" required to meet this standard depends on whether the plaintiff is seeking to invoke specific jurisdiction or general jurisdiction. *See Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015).

General jurisdiction exists when a party's "affiliations with the [forum] State are so 'continuous and systematic' as to render [the party] essentially at home in the forum State." *Goodyear Dunlop Tires Operations S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe*, 326 U.S. at 317). For corporations, the "paradigm forum for the exercise of general jurisdiction is

1 ... one in which the corporation is fairly regarded as at home," *e.g.,* the state of incorporation or principal place of business. *Goodyear*, 564 U.S. at 924. In contrast, specific jurisdiction "depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Id.* at 919 (internal quotations and citations omitted).

### 1. Mitchell Has Not Shown the Court Has General Jurisdiction Over Berwyn Partners.

Mitchell does not clearly state whether she contends that the Court may exercise general or specific jurisdiction over Berwyn Partners. To the extent Mitchell relies on general jurisdiction, the Court grants the motion. Mitchell alleges that Berwyn Partners is "believed to be a resident of Georgia with its principal place of business" in Georgia. (FAC ¶ 4.) Based on those allegations, the "paradigm forum" for the exercise of general jurisdiction would be Georgia. *Goodyear*, 564 U.S. at 924. Mitchell has not put forth evidence to contradict the declaration submitted by Mr. Mr. Hennessy. Although she refers to the advertisement she found on the TrueCars.com website and the financing she received from Capital One, she offers no evidence regarding the extent of Berwyn Partners' advertising or activities regarding financing that pertain to transactions other than her own. In sum, Mitchell has not shown that Berwyn Partners has the type of continuous and systematic contacts with California such that it could be considered at home in this forum.

### 2. Mitchell Has Not Shown the Court Has Specific Jurisdiction Over Berwyn Partners.

Specific jurisdiction over a non-resident defendant exists where: (1) the defendant has purposefully directed its activities at the forum state or has purposefully availed itself of the privileges of doing business in the forum; (2) the plaintiff's claim arises out of or relates to those activities; and (3) the assertion of personal jurisdiction is reasonable and fair. *Schwarzenegger*, 374 F.3d at 802. "The plaintiff bears the burden of satisfying the first two prongs of the test. If the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state." *Id.* (internal citation omitted). "On the other hand, if the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to present a

7

compelling case that the exercise of jurisdiction would not be reasonable." *Menken*, 503 F.3d at 1057 (internal quotations and citations omitted). For the reasons that follow, the Court concludes Mitchell fails to meet her burden on the first prong of this test.

The first prong of this test is treated "somewhat differently in contract and tort cases." *Yahoo! Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006); *see also Schwarzenegger*, 374 F.3d at 802. In tort cases, the Court evaluates the first prong using a three part "effects" test derived from *Calder v. Jones*, 465 U.S. 783 (1984). *See Schwarzenegger,* 374 F.3d at 803. Under that test, the Court looks to whether: (1) the defendant committed an intentional act; (2) the act was expressly aimed at the forum state; and (3) the defendant knows the act would cause harm in the forum state. *Id.* "'[R]andom, fortuitous, or attenuated contacts' are insufficient to create the requisite connection to the forum." *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1142 (9th Cir. 2017) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). In addition, "mere injury to a forum resident is not a sufficient connection to the forum." *Walden v. Fiore*, __ U.S. __, 134 S. Ct. 1115, 1125 (2014); *see also Schwarzenegger*, 374 F.3d at 805 (requiring "'something more' than mere foreseeability in order to justify the assertion of personal jurisdiction in California over" non-resident defendant). In contract cases, the Court looks to whether a defendant "purposefully avails itself of the privilege of conducting activities" or "consummate[s][a] transaction" in the forum, focusing on activities such as delivering goods or executing a contract." *Yahoo!*, 433 F.3d at 1206 (quoting *Schwarzenegger*, 374 F.3d at 802).

Although Mitchell asserts tort claims, the dispute arises out of the sale of the Fusion, which was documented by a contractual bill of sale. Notably, in her third claim for relief, Mitchell asserts she was fraudulently induced to enter into the sale. Accordingly, the Court will apply both the "effects" test applicable to tort cases and the "purposeful availment" analysis applicable to contract cases to evaluate whether it has specific jurisdiction over Berwyn Partners.

The first prong of the "effects test" is satisfied when a defendant acts with the "intent to perform an actual physical act in the real world, rather than an intent to accomplish a result or consequence of that act." *Schwarzenegger*, 374 F.3d at 806. Berwyn Partners concedes Mitchell

8

alleges it committed three "intentional acts": (1) it advertised the Fusion on the TrueCars.com website; (2) it sold Mitchell the Fusion; and (3) it collected sales taxes and fees and sent those funds to the California DMV.

Berwyn Partners argues that it did not "expressly aim" any of those acts at California. In *Walden,* the Supreme Court made clear that a defendant's relationship with a forum state "must arise out of contacts that the defendant [itself] creates with the forum State." 134 S.Ct. at 1122 (quoting *Burger King*, 471 U.S. at 475); *see also Morrill*, 873 F.3d at 1143. Further, the "'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden*, 134 S.Ct. at 1122. The Court also may consider "the specific type of tort or other wrongful conduct at issue." *Schwarzenegger*, 374 F.3d at 807. Mitchell asserts three common law and two statutory claims. The crux of most of those claims is that Berwyn Partners represented it could and would complete all necessary steps to register her car in California, failed to live up to that representation, and may have known from the outset of the transaction that it would not be able to do so, in part because the Fusion had not been subject to a California smog-inspection. In her first claim for relief, she also asserts that Berwyn Partners has misappropriated funds designated for taxes and fees, misappropriated a portion of the $5,500 rebate, and maintains possession of the Fusion.

Mitchell does not suggest that Berwyn Partners owns or operates TrueCars.com. In *Boschetto v. Hansing*, the plaintiff argued that the defendant's use of eBay to advertise a car was significant to the jurisdictional analysis. 539 F.3d 1011, 1018 (9th Cir. 2008). The Ninth Circuit disagreed, citing the district court's decision that the issue was not whether the court had jurisdiction over the intermediary, eBay, "but whether it ha[d] personal jurisdiction over an individual who conducted business over eBay." *Id.* Here, the record suggests that TrueCars.com, like eBay, is no more than an intermediary Berwyn Partners used to advertise its vehicles. However, Mitchell has not alleged that Berwyn Partners uses TrueCars.com to regularly conduct sales in California. *See id.* In addition, Mitchell neither alleges nor puts forth any evidence to show that Berwyn Partners engages in other forms of advertising in California and, thus, that it attempts to target California residents to purchase its vehicles. *See, e.g., Rio Props., Inc. v. Rio*

*Int'l Interlink*, 284 F.3d 1007, 1010 (9th Cir. 2002) (finding effects test satisfied where, in addition to a website, plaintiff showed defendant regularly advertised in forum state both in print and on radio); *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 418 (9th Cir. 1997) ("[S]o far as we are aware, no court has ever held that an Internet advertisement alone is sufficient to subject the advertiser to jurisdiction in the plaintiff's home state.").

In the *Walden* case, the plaintiffs were professional gamblers who were returning from San Juan, Puerto Rico to their home in Nevada. On a layover in Georgia, the defendant, a Drug Enforcement Administration ("DEA") Agent, seized their winnings. 134 S.Ct. at 1119. The defendant also drafted an affidavit to support a claim for civil forfeiture, which the plaintiffs alleged was false and misleading, and forwarded it to a United States Attorney in Georgia. After the funds were finally returned, the plaintiffs filed a *Bivens* action in the United States District Court for the District of Nevada. That court concluded it lacked jurisdiction over the defendant, and the Supreme Court affirmed. It reasoned that the defendant "never traveled to, conducted activities within, contacted anyone in, or sent anything or anyone to Nevada" and, therefore, "formed no jurisdictionally relevant contacts with *Nevada*." *Id.* at 1124 (emphasis added).

The *Walden* Court also distinguished the *Calder* case, which was based on an allegedly libelous newspaper article, on the basis of the nature of the harm associated with a libel claim. *Id.* at 1123-24. The *Walden* Court noted that "[h]owever scandalous a newspaper article might be, it can lead to a loss of reputation only if communicated to (and read and understood by) third persons." *Id.* at 1124. Thus, the "reputation based 'effects' of the alleged libel connected the defendants to California, not just to the plaintiff." *Id.* at 1123-24. The Court then discussed the harm the Waldens alleged they had suffered, the lack of access to their funds, and found that the injury was not "tethered to Nevada in any meaningful way. Respondents (and only respondents) lacked access to their funds in Nevada not because anything independently occurred there, but because Nevada is where respondents chose to be at a time when they desired to use the funds seized by petitioner." *Id.* at 1125.

With respect to the sale of the Fusion, Mitchell alleges that she initiated the transaction with Berwyn Partners and attests she did so because she intended to travel to South Carolina and

10

other destinations on the East Coast "as part of [her] self-employment as a writer." (FAC ¶ 7; Mitchell Decl., ¶ 8.) Based on the allegations in the FAC, any representations that Berwyn Partners' employees made to Mitchell about its ability to register the Fusion were made while those individuals were in Georgia. The record also shows that the letter Berwyn Partners sent to the California DMV was sent from its offices in Georgia. (Thomas Decl. II, Ex. B.) Although Mitchell discusses the transaction in her declaration, she does not attest that she was in California when it occurred. Rather, she attests that she "did not engage in any negotiations with [Berwyn Partners] in Georgia. I arrived in Georgia to take delivery of the car and sign my purchase documents. I had already submitted my financing voucher, my proof of insurance, [and] a copy of my California driver's license over the Internet." (*Id.*, ¶ 12.)

Mitchell does attest she had no intention to register the Fusion in Georgia, but to the extent Berwyn Partners had to comply with certain procedural requirements to register the vehicle out-of-state, "as in *Walden*, the forum state was only implicated by the happenstance of [Mitchell's] residence." *Morrill*, 873 F.3d at 1146. In *Morrill*, the plaintiffs were attorneys who resided in Arizona and represented clients in litigation in Nevada. The plaintiffs alleged the defendants acted to retaliate against them based on their representation of the client and, as one part of this "campaign" of retaliation, the defendants sought to depose the plaintiffs. To do so, they filed civil proceedings in Arizona Superior Court to obtain deposition subpoenas. The plaintiffs moved to quash the subpoenas, which the defendants opposed, and argued the defendants were trying to obtain privileged information and to "drive a wedge" between the plaintiffs and the client. 873 F.3d at 1140. The Ninth Circuit concluded that the defendants' compliance with Arizona's procedural rules did not establish the defendants expressly aimed their conduct at Arizona. "If other states had procedural rules similar to those that were in place in Arizona at the time [the litigation was pending] and Plaintiffs resided in one of them," they would have "experienced this same" allegedly tortious conduct in whatever state they happened to have resided. *Id.* at 1146 (quoting *Walden*, 134 S.Ct. at 1125).

Here, Berwyn Partners did send taxes and registration fees to the California DMV and thus, unlike the defendant in *Walden* and like the defendants in *Morrill*, can be seen to have

11

1 "entered" California. However, as in the *Morrill* case, that entry was "incidental to an out-of-state

2 transaction," *i.e.* the sale of the Fusion in Georgia. *See, e.g., Morrill*, 873 F.3d at 1146-47. The

3 Court concludes the facts of this case are more analogous to *Walden* and *Morrill* than to *Calder*

4 with respect to Berwyn Partners' contacts with *California*, in comparison to its contacts with

5 *Mitchell*. Therefore, the Court concludes that Mitchell has not demonstrated Berwyn Partners

6 expressly aimed its conduct at California. *Cf. Buelow v. Plaza Motors of Brooklyn, Inc.*, No. 16-

7 cv-02592-KJM-AC, 2017 WL 2813179, at *4 (E.D. Cal. June 29, 2017) ("Brandon's "injury is

8 entirely personal to him and would follow him wherever he might choose to live or travel.")

9 (quoting *Picot v. Wilson*, 780 F.3d 1206, 1215 (9th Cir. 2015)).

The Court also has considered whether Berwyn Partners can be considered to have "purposefully availed itself" of doing business in California. "[A] contract alone does not automatically establish minimum contacts in the plaintiff's home forum." *Picot*, 780 F.3d at 1212 (quoting *Boschetto*, 539 F.3d at 1017). It is evident that Berwyn Partner's representatives were in Georgia during any preliminary discussions about the sale, and Mitchell does not affirmatively attest she was in California during that time. She simply attests that contacts occurred over the Internet. *See id.* (finding defendant did not purposefully avail himself of California forum where alleged contract formed in Michigan). The Bill of Sale does not contain an electronic signature, and Mitchell agrees she went to Georgia to take delivery of the vehicle. These facts suggest the final contract was executed in Georgia.

There is no evidence that Berwyn Partners targeted its advertising to attract California residents such as Mitchell. Further, even when the Court accepts as true Mitchell's allegation that Berwyn Partners agreed to do all that was necessary to register the Fusion in California and ensure Mitchell would receive a new and permanent California license plate, the Bill of Sale does not suggest the parties' contractual relationship would continue beyond this single transaction. *Cf. Boschetto*, 539 F.3d at 1017 (plaintiff failed to satisfy purposeful availment prong where "once car was sold the parties were to go their separate ways"; transaction at issue was "a one-shot affair") (internal quotations and citations omitted). In the *Boschetto* case, the court summarized its jurisdictional analysis as follows: "This was a one-time contract for the sale of a good that

12

involved the forum state only because that is where the purchaser happened to reside, but otherwise created no 'substantial connection' or ongoing obligations there." *Boschetto*, 539 F.3d at 1019. That reasoning is applicable to this case. Mitchell, who initiated the transaction, and Berwyn Partners engaged in a one-time transaction that involves California only because Mitchell happens to be domiciled here. The Court concludes she has not shown Berwyn Partners "purposefully availed" itself of the privilege of doing business in California.

Accordingly, the Court GRANTS Berwyn Partner's motion to dismiss for lack of personal jurisdiction.[7]

## CONCLUSION

For the foregoing reasons, the Court GRANTS, IN PART, AND DENIES, IN PART, Berwyn Partner's motion to dismiss. The Court dismisses the case without prejudice for lack of personal jurisdiction. The Court shall enter a separate judgment, and the Clerk shall close the file.

**IT IS SO ORDERED.**

Dated: July 6, 2018

_____
JEFFREY S. WHITE
United States District Judge

---

[7] In light of this ruling, the Court does not reach Berwyn Partner's alternative arguments in support of dismissal or its argument that the case should be transferred.

13